### JAMÉS E. STRAWN *et al.*

#### *v.*

### PATRICK L. O'HARA *et al.*

1. FRAUDULENT CONVEYANCE—*gift by parent to child.* A parent in good circumstances has a right to provide for his child, and no responsibility he incurs in that regard can be visited upon the object of his bounty without clear proof that such was the intention of the parties.

2. CONTRACT—*who liable for work contracted to be done for the benefit of another.* Where a parent, while in good circumstances, conveyed a lot to his daughter, a married woman, and afterwards made written contracts with other parties for the erection of a building thereon for his daughter's benefit, but in his own name, and there being no proof of agency on his part, it was *held,* that the daughter was not liable for the work done under such contract, although she might have occasionally called to see how the work progressed and made inquiries concerning the same.

3. MECHANIC'S LIEN—*as to prior incumbrance not due.* A decree for a mechanic's lien is erroneous which requires a party to discharge prior deeds of trust before the money thereby secured is due.

4. SAME—*time of redemption.* A decree in a suit to enforce a mechanic's lien which allows but three days for redemption is erroneous.

APPEAL from the Superior Court of Cook County; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. PADDOCK & IDE, for the appellants.

Messrs. BARKER & BUELL, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a proceeding in the Superior Court of Cook County, by bill on the equity side of that court, wherein

Patrick L. O'Hara was complainant, and A. C. Prout, James E., and Mary F. Strawn were the principal defendants. Michael Engleman, Simon Babcock, and E. Nelson Salling were also made defendants, as creditors claiming a lien on the premises; and Nicholas B. Rapplege also, he claiming the same in virtue of two deeds of trust made by Strawn and wife to secure the sum of $10,000. William Henry intervened, claiming a lien for labor and material on the same buildings.

It was alleged in the petition that, May 23, 1874, Mary F. Strawn and James E. Strawn were the owners in fee-simple of lot 17, in block 3, in University subdivision of section 34, in the city of Chicago, and that Augustus C. Prout entered into a written agreement with petitioner to do the plumbing and gas-fitting in a building erected thereon, and likewise the plumbing and gas-fitting of another building in course of erection on the adjoining lot 18. It is alleged petitioner was to be paid by Prout, for doing the work, the sum of $1,200 — $300, part thereof, to be applied in the payment of certain lots purchased by petitioner of Prout, situate in the village of Englewood, for which petitioner held a contract of purchase; the remainder to be paid as the work progressed. It is alleged petitioner did the work and had the same completed according to the plans and specifications referred to in the agreement, and that the work done on lot 17 was worth, according to the contract price, $600. It is also alleged that, at the request of Prout, certain work was done on the building on this lot, amounting to $157.56.

It is then alleged that Prout, in making the contract and in procuring the work to be done, though he professed to act in his own behalf, was in reality all the time acting as the agent of James E. and Mary F. Strawn, and that the building on this lot 17 was erected for the joint use and benefit of Prout and the Strawns, and the work done upon it by petitioner was done with the full knowledge, approbation, and consent of James E. and Mary F. Strawn.

The intervening petitioner, Henry, claims in his petition for stone-work, on a like contract entered into with Augustus C. Prout.

The defendant Prout answered the petition, denying the material allegations, especially that of agency, and claimed he had made full payment for all the work done on the buildings.   The Strawns, answering for themselves, say, the premises in question are the property of Mary F. Strawn, but deny that Prout ever acted as her agent in making the alleged contract.   And the defendants, Prout and the Strawns, jointly and severally further answer that Mary F. Strawn is, and was, the sole owner of lot 17, he, James, having no other than an expectant interest of curtesy or dower in the same, and deny that Prout acted in the matter as her agent, and insist that the work has been fully paid for, except as to the sum of $236.

Replications were put in, and the cause was heard on bill, answers, and replications, and referred to a master to take proofs.

On the proofs submitted the court found, as alleged by the petitioner, that Prout, in making this contract, was acting as the agent of Mary F. Strawn, she being the owner in fee of lot 17, and decreed as prayed.

To reverse that decree this appeal is prosecuted.

The whole case turns upon the fact of agency or not.   The written contract entered into by O'Hara was with Prout alone, and made no reference whatever to the fact now alleged, that he was in "reality" acting as an agent of Mary F. Strawn, the owner of the lot.

We have examined the record carefully as to this fact, and we fail to find a single circumstance justifying the assertion and assumption that Prout was acting as an agent, but the proof is clear he was acting on his own responsibility alone. Mrs. Strawn was his daughter, to whom he had conveyed lot 17 and erected the building upon it for her use and benefit.   He was in a condition to make this gift, and the petitioner entered into the contract with him with no reference

whatever to Mrs. Strawn. Prout never intended, by the contract, to incumber or risk her interest, or make her responsible for his gratuitous acts. A parent in good circumstances, as Prout then was, has a right to provide for his child, and no responsibility he incurs in that regard can be visited upon the object of his bounty without clear proof such was the intention of the parties. The only act having the slightest semblance of the work being done on the responsibility of Mrs. Strawn is the fact stated by O'Hara in his testimony, when he says: "She came in the house occasionally, and ordered me at one time to change a basin in the hall up stairs. She came there and looked at the work and asked me questions about it frequently."

What more natural than this? Mrs. Strawn knew her father was having the house built for her, in which she was to live, and it was quite proper she should direct where a water-basin should be placed. That she should go and look at the work as it progressed is quite natural, but it is not enough to charge her with the expense of the building. There does not appear in the whole transaction anything indicating the ultimate or immediate liability of Mrs. Strawn. The contract was made by her father for himself, and all the payments were made by him without any reference to her. The case is too plain for doubt. The evidence wholly fails to sustain the decree.

There are various objections on other grounds to the decree. There was error in requiring appellant Strawn to discharge the deeds of trust, as the money secured thereby was not due, and would not be due until a long time thereafter. It was error to allow but three days for redemption. Whatever rights Prout may have had in the premises, they were equitable merely; but whatever interests he may have had, they were subsidiary to the trust deeds.

No sufficient ground is shown for this decree, and it must be reversed and the cause remanded.

*Decree reversed.*