BLANCO *v.* HERNÁNDEZ ET AL.

APPEAL from the District Court of Mayagüez.

No. 791.—Decided June 26, 1912.

INJUNCTION—APPEAL—MERGER OF PRELIMINARY INJUNCTION.—When a preliminary injunction is made perpetual by a subsequent order said order puts an end to the preliminary injunction which is then merged into the perpetual injunction. Both orders having been appealed from it is unnecessary to consider separately the appeal from the order granting the preliminary injunction.

THIRD PARTIES—SALE FOR DELINQUENT TAXES—ATTACHMENT BY THIRD PARTY—RECORD OF TITLE.—According to the registry of property the estate which is the subject of this suit belonged to A, B and C in joint ownership. The entire property having been sold at public auction for delinquent taxes, the plaintiff D acquired the same and allowed about three years to elapse without recording in the registry of property the certificate of sale issued to him by the collector of internal revenue. Before he presented said certificate of sale in the registry the defendant E entered in said registry an attachment on the interest of C to secure the effectiveness of the judgment in a suit which he had instituted against C. Judgment having been rendered in the suit E brought in said interest at public auction and presented for record in the registry of deed of adjudication issued to him by the marshal of the municipal court, a cautionary notice of which deed was entered and converted later into a permanent record. It is not clearly shown that E knew that D had acquired the property in litigation at the auction sale for delinquent taxes.

*Held:* That the plaintiff E is a third party in good faith with respect to the joint interest of C which he acquired without knowledge of the auction sale for delinquent taxes and that he recorded his title in the registry before the plaintiff D recorded the certificate of sale which he obtained by virtue of said sale for delinquent taxes.

ID.—NOTICE—ACTION IN INTERVENTION—SALE FOR DELINQUENT TAXES.—With respect to the other two joint interests in the estate in litigation belonging to A and B and acquired, as stated in the preceding paragraph, by D when he acquired the entire estate at the sale for delinquent taxes. *Held:* That said two joint interests belong to the plaintiff D and that the defendant E cannot invoke the character of third party in regard to them, because the plaintiff's title was recorded in the registry of property prior to the entry of the purchase made by the defendant and because the latter knew, moreover, that said property did not belong to his debtor. When he acquired these shares he had been summoned already in the action in intervention instituted by the plaintiff and had express knowledge of the fact of the sale at public auction for the non-payment of taxes.

ID.—CONSTRUCTION OF MORTGAGE LAW.—The provisions of the Mortgage Law should not be construed in the sense that they secure presumed rights acquired knowing that in truth they did not exist but merely figured on the books of the registry. The law favors and secures the innocent third party, but it cannot favor and secure him who acquires knowing without room for doubt of any kind that he has acquired his right from a person who is not the owner, as appears in the case at bar.

ID.—KNOWLEDGE OF ALIENATION.—A party who although not intervening in the act or contract had full knowledge thereof cannot be considered as a third party in accordance with Mortgage Law, and under this doctrine a person who contracts a loan by means of a mortgage on real property knowing that it was alienated previously by the same person with whom he contracts, although this may not appear in the registry, has not the character of a third party provided that such knowledge has been revealed in the acts of the person acquiring the property or in facts which show clearly that he had such knowledge.

ID.—KNOWLEDGE OF ENCUMBRANCES.—If it is shown that a person who invokes the character of a third party has a knowledge of the encumbrances on an estate he loses the privilege of such third party.

PREFERRED LIEN—TAXES—EXTINCTION OF MORTGAGES.—The lien of the People of Porto Rico for taxes is a preferred lien and a property otherwise encumbered having been sold at public auction for taxes and the period fixed by law for the redemption thereof having expired without the mortgage creditor having exercised his right, the other mortgages become extinguished.

COSTS—DISCRETIONAL POWER—APPEAL.—If it is not shown that the trial court abused its discretional power in taxing the costs the decision thereof on this point will be affirmed.

ID.—OBJECTION TO MEMORANDUM OF COSTS—WRITTEN ANSWER TO OBJECTION—PRESUMED ACCEPTANCE.—In the case at bar it was held that the fact that the plaintiff made no written answer to the defendant's objection to the memorandum of costs is not sufficient in itself from which to conclude, considering the circumstances of the case, that the plaintiff accepted as faultless the memorandum of costs filed by the defendant.

RECONSIDERATION OF JUDGMENT—QUESTIONS RAISED FOR THE FIRST TIME ON MOTION TO RECONSIDER—ASSIGNMENT OF ERRORS.—A judgment will not be reconsidered on grounds alleged for the first time in the motion to reconsider when said grounds were not specifically and clearly alleged in the assignment of errors as rules 42 and 43 of this court require of the appellant in order that said questions may be discussed and decided.

The facts are stated in the opinion.

*Mr. José Benet* for respondent.

The defendant and appellant, Agustín Hernández Mena, appeared in his own behalf.

MR. JUSTICE DEL TORO delivered the opinion of the court.

In the present case five appeals were taken, all of which were based on the same transcript and all heard at the same time.

The defendant, Hernández Mena, appealed—

First. From an order of the court, dated November 11, 1910, refusing to annul a certain restraining order issued prior thereto.

Second. From an order of December 15, 1910, granting a preliminary injunction.

Third. From part of the judgment of February 25, 1911; and

Fourth. From an order of March 16, 1911, approving the memorandum of costs.

The plaintiff, Alejandrina Blanco, appealed from part of the judgment of February 25, 1911.

It is unnecessary to consider separately the appeals in regard to the preliminary injunction since by one of the findings of the appealed judgments the preliminary injunction was made perpetual, and since, according to the jurisprudence laid down in the case of *Gage* v. *Parker,* 178 Ill., 455, a decree making perpetual a temporary injunction works a dissolution of the latter, which is then comprised in the former.

In considering the appeals taken from the judgment by both parties we shall study and decide the essential questions

involved in the litigation and then decide what is proper with respect to the memorandum of costs.

The judgment rendered in this case is based on the findings of facts stated by the trial judge and included in the transcript of the record, as follows:

1. Prior to the year 1907 Manuel Arán, Clotilde Arán, also known as Agripina or Crispina, and Inocencia Cuascú were owners of the following property: "Rural property situated in *barrio* Indiera Baja, municipality of Maricao, composed of 130 *cuerdas* of land divided by the Guabá River, with a dwelling house, mill, *glacis* (drying ground), storehouse, etc., and planted with coffee, bananas, and pasture; bounded on the north by the road leading to the Indieras; on the south by lands belonging to Damiani Brothers, formerly to Remigio Puigmirong and Sons; on the east by lands belonging to Antonio Amill Oramas, formerly to Bernardo Collado; on the west by lands belonging to Flora and Margarita Simonetti and Antonio Amill." Said estate was recorded in the registry of property, the valuation thereof being $10,300, and the shares of the owners, as shown by the registry, were as follows: Manuel Arán, $4,695.75; Clotilde Arán, $1,776.50; Inocencia Cuascú, $3,827.75.

II. By public deed of December 11, 1902, Manuel Arán, tenant in common, mortgaged his aforesaid share to Inocencia Cuascú, the other tenant in common, for the sum of $2,817.45, said mortgage on the share of Manuel Arán being recorded in the registry in favor of Inocencia Cuascú.

III. Likewise, by deed of December 11, 1902, the other tenant in common, Clotilde or Agripina Arán, mortgaged her share, together with another estate, to tenant in common, Inocencia Cuascú, to insure payment of a credit of $2,200, and said mortgage was recorded in the registry of property in favor of Inocencia Cuascú. This mortgage was satisfied by the debtor, and on June 3, 1906, Inocencia Causcú gave her a receipt for the sum total in a private instrument, but the mortgage was never canceled before a notary nor was

the cancellation thereof recorded in the registry of property.

IV. For purposes of taxation the estate appeared on the tax rolls of the Treasury in the name of Manuel Arán. The property was sold for nonpayment of taxes by The People of Porto Rico at public auction held by Francisco Rivera, internal-revenue collector, on October 14, 1907, for $600, and was acquired by the plaintiff, Alejandrina Blanco, wife of the defendant, Emilio Arán. Said collector delivered to the purchaser a certificate stating the sale, the description of the estate, the name of the delinquent taxpayer, Manuel Arán, that the property appears recorded in the registry of property in the name of Manuel Arán, Clotilde Arán, and Inocencia Cuascú y Montaz, and that such certificate when once recorded in the registry of property of the district wherein said lands are situated constitutes absolute title to such property in favor of the purchaser, the same being free from all encumbrances except the lien for taxes for the second semesters of the fiscal years 1906–7 and 1907–8. The certificate, however, also stated that the owner of the property sold, his heirs or assigns, duly authorized agent, or mortgage creditors, had the right to redeem the same within 180 days, counting from the date of the certificate, upon payment to the purchaser, her heirs or assigns, of the amount of the purchase price, with interest at the rate of 12 per cent per annum, plus all costs and taxes due. Notice of the aforesaid sale was given Manuel Arán, Clotilde Arán, and Inocencia Cuascú, but the property was not redeemed. The plaintiff, Alejandrina Blanco, failed to record said certificate until October 28, 1910, when the same was entered in so far as relates to the share of $4,695.75 corresponding, according to the registry, to the delinquent debtor, Manuel Arán y Cuascú, in the $10,300 at which the estate is valued. The record of the two remaining shares in said estate was refused and a cautionary notice effective for 120 days was entered in lieu thereof, because on the aforesaid date the above-mentioned shares appeared recorded in favor of persons other than said Man-

uel Arán—that is, in favor of Agustín Hernández Mena and of Clotilde Arán. From October 14, 1907, the plaintiff has paid the taxes levied on the property and has been in possession thereof, excepting the shares which, as will hereinafter be stated, were delivered to the defendant, Agustín Hernández Mena, by virtue of a judicial decree.

V. It does not appear clearly that the defendant, Agustín Hernández Mena, had knowledge of the facts stated in Paragraph IV of this statement of findings of fact prior to March 12, 1910.

VI. Inocencia Cuascú died in the year 1908. On February 17, 1910, Agustín Hernández Mena, in litigation with her heirs, Manuel, Francisco, Agripina, Clotilde, and Emilio Arán y Cuascú, attached the share of $3,827.75 in the aforesaid estate, which share was already attached to secure the effectiveness of the judgment. The defendants in said suit were notified of this attachment, and the same was published in the form of notices for a period of 20 days. Said share was sold at public auction on March 11, 1910, by the marshal of the municipal court, the same being acquired for $50 by Agustín Hernández Mena. On March 12, 1910, the marshal of the municipal court executed a deed to him which was presented to the registrar of property on March 29, 1910, and a cautionary notice thereof was entered, said notice having been converted later into a permanent record. On November 7, 1910, the marshal of the Municipal Court of Mayagüez gave Agustín Hernández Mena possession of the share of $3,827.75.

VII. In view of the attachment levied by Agustín Hernández Mena, as stated in the preceding paragraph, Alejandrina Blanco, on March 9, 1910, filed a complaint in intervention in the district court (civil case No. 2657) alleging her purchase of October 14, 1907, for payment of arrears of taxes; that the estate was not redeemed by any of the parties who had possessed a right thereto; and that the property belonged solely to the plaintiff, Alejandrina Blanco, and

petitioned for a declaration by the court to this effect, and that an order be issued directing the attachment levied to be vacated. On March 12, 1910, summons to answer this complaint was served on the defendant, Agustín Hernández Mena. The defendant demurred to the complaint, and his demurrer having been dismissed he filed an answer to said complaint. The case was tried and on September 1, 1910, the district court rendered judgment declaring that since the real property attached had been adjudicated to Agustín Hernández Mena by deed recorded in the Registry of Property of San Germán and a copy of said deed had been filed with the answer of the defendant, Agustín Hernández Mena, an action in intervention for dominion does not lie. The court said: "We are of the opinion that from that moment the action in intervention for dominion was not the proper one, and the plaintiff could have brought a different action from that mentioned or taken any other action in furtherance of her rights. For the foregoing reasons the action in intervention for dominion is dismissed, reserving to the plaintiff all her right to bring any other action she may see fit, each party paying his own costs."

VIII. Notwithstanding that by the aforesaid summons Agustín Hernández Mena acquired express knowledge of the purchase made by Alejandrina Blanco at the sale for non-payment of taxes in 1907, he also, in execution of judgment against the Succession of Inocencia Cuascú, had the mortgage of $2,200 still appearing effective in favor of the latter and which was a lien on the share of $1,776.50 pertaining to Clotilde Arán and on another estate, sold at auction in the municipal court. It is not shown when the attachment was levied nor that the same was recorded. The auction was held June 16, 1910, and Hernández himself purchased the mortgage and recorded such purchase in the registry on July 22, 1910. A few days later Hernández instituted summary proceedings in the district court (civil case No. 2863) to foreclose said mortgage. The share of $1,776.50 was sold at

public auction on October 22, 1910, and adjudicated to Agustín Hernández Mena for the sum of $200. On the same day a deed was executed in his favor by the marshal of the district court. The instrument having been filed with the registrar of property, the record thereof was refused on November 19, 1910, because of the defect that this share of $1,776.50 appeared noted in favor of Alejandrina Blanco, stated in Paragraph IV of this statement of findings of fact, but in lieu of such record a cautionary notice was entered effective for 120 days. On November 7, 1910, the marshal of the district court gave possession of the said share of $1,776.50 to Agustín Hernández Mena.

IX. Notwithstanding that Agustín Hernández Mena, by the summons referred to in Paragraph VII hereof, had knowledge of the aforesaid purchase, said Hernández Mena, in the execution of his judgment in the Municipal Court of Mayagüez, also acquired for $50, on June 15, 1910, the other mortgage of $2,817.45 of Manuel Arán. The attachment of this credit was levied on March 20, 1910, but it does not appear to have been recorded in the registry. On June 16 the corresponding notarial document was executed to the purchaser by the marshal of the municipal court, and on July 22, 1910, said instrument was recorded in the registry of property. Shortly afterwards Agustín Hernández Mena instituted summary proceedings (civil case No. 2864) in this district court to foreclose said mortgage, and as a consequence thereof the mortgaged property—that is, the share of $4,695.75—was advertised for sale at auction, said auction having been suspended by virtue of the injunction granted in the present case.

X. In arguing the case the distinguished attorney for defendant, Agustín Hernández Mena, admitted that the latter had no title to the share of $4,695.75 formerly corresponding to Manuel Arán, and that the mortgage of $2,817.45 on said share was extinguished by operation of the sale at public auction in 1907 for nonpayment of taxes.

We have studied carefully the pleadings and the evidence and we are of the opinion that the facts stated above constitute a faithful summary of all those alleged and proved in this suit. Having taken them as a basis and after establishing its conclusions of law the court rendered judgment, as follows:

"Judgment entered February 25, 1911. Title. Judgment. This case was called for trial on February 16, 1911, the plaintiff appearing assisted by her counsel, Attorney José Benet, and the defendant, Agustín Hernández Mena, assisted by his counsel, Attorney Alfredo Arnaldo. The other defendants did not appear. The briefs, evidence, and arguments of both parties having been heard, the court reserved decision until to-day, when a statement of findings of fact and conclusions of law is made, and in accordance therewith the following judgment is rendered:

"(a) Declaring that the shares of $4,695.75 and $1,776.50 in the estate described in the complaint are the exclusive property of the plaintiff, Alejandrina Blanco. The record in the registry of property in the name of Alejandrina Blanco is ordered, as is also the cancellation of any entry or notice in favor of Agustín Hernández Mena, Clotilde Arán, or Manuel Arán relative to said shares.

"(b) Declaring that the share of $3,827.75 is the exclusive property of the defendant, Agustín Hernández, and ordering the cancellation of any notice in favor of Alejandrina Blanco relative to said share.

"(c) Declaring that the two mortgages of December 11, 1902, for $2,817.45 on the share of $4,695.75, and the mortgage of $2,200, in so far as it affects the share of $1,776.50, are extinguished, and ordering the cancellation thereof in the registry.

"(d) Making permanent and perpetual the preliminary injunc-half to be paid by said plaintiff.
tion issued in this case.

"(e) Imposing on the defendant, Agustín Hernández, the payment of his costs and of one-half of the plaintiff's costs, the other

"Let this judgment be entered in the proper book of this court and the necessary mandates for the execution thereof issue to the Registrar of Property of San Germán and the marshal of this court.

"Mayagüez, P. R., February 25, 1911. (Signed) Otto Schoenrich, District Judge. Attest: (Signed) José Basora Mestre, Secretary."

Findings *a, c, d,* and *e* were appealed by the defendant, Hernández Mena. The other defendants were declared in default and have taken no appeal. Finding *b* was appealed by the plaintiff, Alejandrina Blanco.

We shall examine first the appeal of the plaintiff.

Agustín Hernández Mena instituted proceedings in the Municipal Court of Mayagüez against Inocencia Cuascú, afterwards her succession, and obtained a judgment in his favor for $402.13. Among other properties he attached the share of $3,827.75 that belonged to said Inocencia in the estate above referred to, which share was recorded in her name in the registry of property and was adjudicated to him finally on March 11, 1910. As stated by the trial judge in his statement of findings of fact, it did not appear clearly that he had knowledge of the acquisition of the estate of the plaintiff at the sale for nonpayment of taxes. Hernández Mena obtained his adjudication deed and presented the same on March 29, 1910, in the registry of property where a cautionary notice thereof was entered, which notice later became a permanent record. The plaintiff failed to record her title to the aforesaid share in the registry of property until October 28, 1910.

Considering the foregoing facts, it is necessary to conclude with the district court that the said share of $3,827.75 belongs to the defendant, Hernández Mena, because he must be considered as a third party acting in good faith at the time he acquired said share, and because, having acquired the same as a third party acting in good faith, he recorded his title in the registry before the plaintiff recorded hers.

We shall now study the appeals of the defendant, Hernández Mena.

We are of the opinion that finding *a* of the judgment appealed is entirely correct. The share of $4,695.75 belongs to the plaintiff, since she acquired the same by the purchase of the whole estate on October 14, 1907, and later, on October 28, 1910, recorded it in her favor in the registry of prop-

erty, and because the attorney himself for Hernández Mena thus acknowledged it at the trial. The share of $1,776.50 also belongs to the plaintiff, since she acquired the same in like manner and entered a cautionary notice thereof in the registry with priority to the notice of the purchase made by Hernández Mena.

In regard to these shares Hernández Mena has not the character of a third party acting in good faith, which we recognized in him with respect to the share of $3,827.75. When he acquired the mortgage on the share of $1,776.50 and later the share itself, and the mortgage on the share of $4,695.75, he knew that said properties did not belong to his debtor. On those dates summons in the action in intervention had already been served on him, and he knew expressly the fact of the sale of the estate for nonpayment of taxes, the existence of which fact, moreover, he could have verified easily by applying to the public offices of the collector of internal revenue or of the Treasurer of Porto Rico.

The provisions of the Mortgage Law cannot be construed in such manner as to guarantee presumed rights acquired with the knowledge that they do not truly exist and which figure only on the books of the registry. The law protects and guarantees the rights of innocent third parties, but it cannot protect nor guarantee the rights of a party who acquired property with the knowledge and without doubt of any kind that the person from whom his title is derived is not the owner, as occurs in the present case.

The Supreme Court of Spain, in a judgment rendered May 13, 1903, said:

"That the meaning and spirit of article 34 of the Mortgage Law is not so absolute, as repeatedly held by the Supreme Court, as to confer the character of a third party on one who contracts a loan secured by mortgage upon real property knowing that said property had been previously alienated by the person with whom he contracted, although this may not appear from the registry, provided that said knowledge has been disclosed by personal acts of the vendee,

or by facts whose meaning cannot be disregarded and which prove his assent; for in such case, according to legal reasons, the effect of such knowledge is in harmony with the clear provisions of the Mortgage Law since one of its principal objects is the publicity of encumbrances, liens, and other vicissitudes affecting real property so that no one may be liable for those he ignores, it is beyond question that in accordance with said law a person who did not take part in an act or contract, but had perfect knowledge of it, cannot be considered a third party; this doctrine is in accordance with the principles of law, which hold that what has been accepted without protest, or expressly or tacitly consented to, cannot be opposed." (95 Civil Jurisprudence, 777.)

The foregoing doctrine was affirmed by the said Supreme Court in its judgments of January 11, 1895, 77 Civil Jurisprudence, 69; February 7, 1896, 79 Civil Jurisprudence, 260; and March 24, 1905, 100 Civil Jurisprudence, 679. This last decision in its conclusions of law states that the provisions of article 34 of the Mortgage Law in favor of third parties acquiring property cannot be invoked unless the causes of nullity or rescission affecting a contract do not appear on the registry of property *or are ignored by such third party when entering into the contract.*

This Supreme Court of Porto Rico since the commencement of its labors has been inspired by the same considerations as the Supreme Court of Spain. In the case of *Valdés v. Valle y Noble* (1 S. P. R., 75), the doctrine is established that if the so-called *third party* "has knowledge of the liens existing on the property, and this is proven, he loses this character."

We are of the opinion that finding *c* is also correct. The lien of The People of Porto Rico for the collection of taxes is a preferred lien, and the estate once sold and the period allowed by law for the redemption thereof having expired without the mortgage creditor having exercised his right the mortgages became extinguished. The acquisition of the mortgages on the aforesaid shares of $4,695.75 and $1,776.50 by defendant, Hernández Mena, was effected after said defend-

ant had express knowledge of their extinction by virtue of the sale of the estate at public auction, and therefore he has not the character of an innocent third party, in accordance with the jurisprudence we have invoked and previously accepted.

With respect to finding *d* we will say that we do not deem it necessary to discuss whether or not a writ of injunction could have issued in this case considering the circumstances thereof, since it was decided finally by judgment that the mortgage, the foreclosure of which was stayed, was extinguished by reason of the sale for the nonpayment of taxes, and we have just expressed our conformity with such finding.

In regard to finding *e* respondent, Hernández Mena, not having shown that the court abused its discretion in imposing upon him the payment of half the costs, we are of the opinion that the same should be affirmed.

We have studied the appeal relative to the memorandum of costs and in our opinion the fact that the plaintiff having failed to file a written answer to the objection of the defendant, considering the circumstances of the case, is not sufficient by itself to conclude that the plaintiff accepted said objection of the defendant as well taken. The transcript shows that the memorandum and the written objections to the items thereof were submitted to the trial judge for final decision and that said judge, who had before him all the records in the case, decided to approve the same, fixing the amount of the costs to be satisfied by the defendant at $120.

In view of all of the foregoing we are of the opinion:

First. That the appeals taken by the defendant, Hernández Mena, from the orders of November 11 and December 15, 1910, should be dismissed because they are unnecessary.

Second. That the appeals taken by the plaintiff from finding *b* of the judgment appealed and by the defendant, Hernández Mena, from findings *a, c, d,* and *e* of said judgment cannot be sustained, and consequently the said judgment ren-

dered by the District Court of Mayagüez on February 25, 1911, should be affirmed.

Third. That the appeal from the order regarding the costs which the defendant, Hernández Mena, should pay cannot be sustained.

*Decided accordingly.*

Justices MacLeary and Wolf concurred.

Chief Justice Hernández and Justice Aldrey signed, stating that they concurred in some of the findings of the judgment but not in others.

---

## MOTION TO RECONSIDER JUDGMENT.

### Decided October 14, 1912.

#### DECISION.

On June 26 last this court rendered a judgment in which, among other things, the order made by the court below on March 16, 1911, fixing the costs to be paid by the defendant, Hernández Mena, was affirmed.

Hernández Mena now moves this court for a reconsideration of that part of said judgment on the ground that he was sentenced by the trial court to the payment of his own costs and half of the costs of the plaintiff, and that in the order affirmed certain items are included which cannot be considered as costs. He cites in his defense the judgment rendered by this court on June 29 of the present year in the case of *Veve* v. *The Municipality of Fajardo.*

As provided by rules 42 and 43 of the Supreme Court, Hernández Mena should have alleged in this court in definite and clear terms and in due time the legal principle upon which he based his motion for reconsideration, assigning the errors upon which he based his appeal. This he has not done and, therefore, we cannot consider and decide the same in the form in which it is now presented to us.

The allegation of Hernández is raised for the first time

and is tardy, and as it was not submitted to us for consideration prior to this time it cannot be considered now.

The motion to reconsider is overruled.

*Reconsideration denied.*

Chief Justice Hernández and Justices MacLeary, Wolf, del Toro and Aldrey concurred.